# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVIN FULLER | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. AW-12-cv-2914 |
| J. MICHAEL STOUFFER, et al. | * | |
| Defendants | * | |

***

## **MEMORANDUM**

Pending are Defendants' Motions to Dismiss or for Summary Judgment. ECF No. 24 and 30. Plaintiff opposes the motions. ECF No. 29 and 37. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff Kevin Fuller ("Fuller") alleges that on December 25, 2011, another inmate incarcerated at North Branch Correctional Institution (NBCI), Donald Thomas, bit him twice during the 11 to 7 shift. He states he warned most of the Defendants listed in the Complaint that if they did not separate Thomas and him, that Thomas would bite Fuller. ECF No. 1 at p. 3.

Fuller further alleges that on July 7, 2011, his cellmate, Curtis Ruffin, attacked him in the housing unit and the assault was captured on surveillance video. Fuller claims he told the tier officer, Teal, that Ruffin told Fuller that if he was not moved out of the cell, Ruffin would kill Fuller. Fuller requested to be moved out of the cell immediately, but after Teal had spoken to her supervisor, she told Fuller that the supervisor and Officer Dom replied that Fuller should do what he has to do. ECF No. 1 at p. 9. Fuller reported the exchange with Teal to Officer Clittes who called Sergeant Graham about the matter. Fuller was asked to write a statement regarding

the incident by Officer Dom and another officer. Fuller claims he wrote the statement explaining that Ruffin was a gang member who threatened to assault him and Ruffin also threatened that other gang members would attack him. Fuller again requested to be removed from the cell or to have Ruffin moved. *Id*. at p. 9. Fuller claims after he wrote the statement he was told to go to lunch and, upon his arrival in the dining hall, he saw Ruffin there. *Id*. at p. 10. Fuller alleges he spoke with Lt. Wilt on his way back from the dining hall to the housing unit about the problem with Ruffin. He claims Wilt told him he would move Fuller on Saturday; the conversation took place on a Thursday. *Id*.

After coming back to the housing unit, Fuller claims Teal told him "do not miss your door." *Id*. When Fuller tried to lock into the cell, he was attacked by Ruffin. Fuller states he tried to defend himself, but turned to run away because he feared Ruffin had a knife. A signal 10-10 was called, indicating two inmates were fighting, and when officers arrived, Fuller was gassed and pepper sprayed. Fuller claims Officer Anderson said, "Nigger what are you doing fighting." Fuller claims that Ruffin was not maced during the incident and was found not guilty of disciplinary infraction charges. *Id*. at pp. 10 – 11.

Fuller states he was handcuffed behind his back and not permitted to wash the mace off of his face for over one hour following the incident. Fuller pled not guilty at his disciplinary hearing, but was found guilty of fighting and given 365 days of disciplinary segregation. *Id*. at p. 11.

During Fuller's disciplinary segregation confinement, he was put into a cell with an inmate named Donald Thomas-Bey, who Fuller describes as a psychopath. Fuller claims that Thomas was on disciplinary segregation because he had just stabbed his cellmate. He claims after a few days of listening to Thomas, Fuller felt threatened. Thomas told Fuller that he used to

shoot up heroin; that he tested positive for Hepatitis C; and that he wanted to bite someone in order to give them Hepatitis C. Fuller alleges that Thomas then stated he was going to bite Fuller. Fuller wrote a request slip addressed to Sgt. McAlpine, Lt. Harbaugh, and Sgt. Leydig, requesting that Thomas be moved from the cell. In addition, Fuller told Officer Lambert what Thomas said he would do to him if he was not moved from the cell.

On December 22, 2011, Officer Durst was doing escorts of inmates who were scheduled for a Behavioral Management Program (BMP) review. When Fuller went for his review, he was in the hallway sitting in a chair and told Lambert what Thomas was threatening to do Fuller, but Lambert ignored Fuller. ECF No. 1 at p. 12. Durst escorted Fuller into the room for the BMP review. Fuller notes that he is black and that the only other black person in the room was a psychologist, Dr. Banks. Fuller states that V. Warnick, a female, did most of the talking at the review meeting. Fuller claims he will never forget the day because he begged the entire BMP committee to protect him from Thomas. He told the committee that Thomas was on death row at one time for a savage murder and rape of two people; that Thomas had Hepatitis C and was threatening to bite Fuller to infect him with the disease. Fuller claims the committee ignored him and simply noted that Fuller wanted a single cell. *Id*. at p. 13.

Three days later, on December 25, 2011, Thomas fulfilled his threat and bit Fuller twice. *Id*. at p. 14. Fuller was taken to the medical unit for treatment and was seen by Dianne Harvey, R.N.. Fuller was prescribed an antibiotic, Amoxicillin, by Dr. Ottey, and was informed by Harvey that he would be tested for Hepatitis C and HIV at a later date. Fuller alleges he has scars from the bites inflicted by Thomas. *Id*. at p. 14. Fuller alleges that following the assault by Thomas he was removed from the BMP without cause. He states his removal was retaliatory

3

because he filed an administrative remedy procedure complaint (ARP) regarding the BMP committee's lack of response when told of the threat presented by Thomas. *Id*. at pp. 14 and 15.

In his first amended Complaint, Fuller claims that two BMP committee members, Householder and Banks, testified at an Inmate Grievance Office (IGO) hearing regarding his claim that they failed to take steps to protect him from Thomas. He claims both Householder and Banks lied at the hearing, stating they did not recall him warning the committee that Thomas had threatened him, but that Fuller had requested a single cell. He asserts that Banks told him in a private meeting that he did remember Fuller saying Thomas had threatened him, but changed his account at the hearing. Fuller states he was angered by Banks' dishonesty at the hearing and left the hearing. He further claims that staff refused to process his administrative remedy requests following his complaints regarding their failure to remove him from the cell with Thomas, where he remained until February 23, 2012. ECF No. 4.

**Standard of Review**

Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan*

4

*v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted

6

punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Fuller's claim against Defendant Harvey is that when she treated him for the bite wound inflicted by Thomas, he asked her to have him moved from the cell he shared with him, but she failed to take action. Otherwise, Fuller's allegations regarding Harvey reflect that she addressed his concerns and provided him with the medical care he required. Harvey explained to Fuller at the time, and states again in her affidavit, that housing assignment matters must be addressed through security personnel. Fuller does not refute Harvey's affidavit, nor does he offer any evidence that Harvey failed to take action she was authorized to take. Accordingly, his claim against Harvey shall be dismissed.

<u>Failure to Protect</u>

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825,

833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).

Correctional Defendants assert that on July 7, 2011, at approximately 10:30 a.m., a correctional officer saw Fuller throw a punch with a closed fist at inmate Curtis Ruffin. After a signal 10-10 was called over the radio, Fuller was observed throwing a second punch at Ruffin. Officer John Ruby approached the two inmates and ordered them to stop fighting; Ruffin complied, but Fuller did not. Ruby applied a short burst of pepper spray to Fuller's face in order to get him to stop hitting Ruffin; Fuller stopped and laid on the floor. Fuller was then restrained and taken to the medical room in the housing unit where he was treated by a nurse. At that time Fuller denied any pain or injury and no injuries were observed. Fuller was given a shower to lessen the effects of the pepper spray. ECF No. 30 at Ex. A, pp. 2 – 8.

Lt. Wilt, the manager of Fuller's housing unit, states it was difficult to find cellmates for Fuller because he is a chronic complainer and always wanted to be single-celled. Wilt alleges Fuller never informed him in writing or verbally that he was having a problem with Ruffin, but if he had Wilt would have interviewed Fuller as well as Ruffin to determine if there was an indication that a dangerous situation had developed. In the event it was determined a dangerous situation existed, Wilt would have placed both inmates on administrative segregation pending an investigation. Wilt further explains that if the situation did not appear to be dangerous, he would have informed the inmates that compatibility is not a consideration for cell assignments, but that

8

each or both could request a convenience transfer. Additionally, the two inmates would be reminded that they would be held accountable for their actions. *Id*. at Ex. B. The remaining two Defendants named by Fuller regarding the July 7, 2011 incident assert they were not working in the area alleged by Fuller and were in no way involved. *Id*. at Ex. C and D.

With respect to the December 26, 2011 incident, Defendant Bruce Liller, Chief of Psychology at NBCI, states that Fuller has made numerous requests for changes in housing, focused on his desire to be single-celled or to participate in programs he perceives to be advantageous to him. Liller claims that Fuller is manipulative and changes the facts of his problems frequently in order to make a more convincing case with psychology staff. Liller states the strategy employed by Fuller is known as "piling on" and is indicative of malingering. ECF No. 30 at Ex. E.

In addition to his malingering, Defendants state that Fuller is often inappropriate with female staff. As an example, Fuller sent a note to Defendant Donnell Householder promising to remove her from the instant lawsuit if she performed a sexual act with Fuller.[1] ECF No. 30 at Ex. A, p. 39. Additionally, Fuller has exposed himself to a female nurse making rounds in his housing unit while using vulgar and disrespectful language.[2] ECF No. 24 at Ex. 2, p. 41.

The December 22, 2011 BMP meeting referenced by Fuller did not include, as he claims, a statement by him that his cellmate presented a threat of harm to him. Defendants state that if such a report had been made, it would have been noted. The only notation made was that Fuller was asking for a single cell. ECF No. 30 at Ex. A, p. 15 and Ex. E. Additionally, psychology staff would have notified security staff of such a report, who would then make a determination if a threat exists. None of the treatment team members recall Fuller claiming he was in danger of

---

[1] Fuller does not dispute this allegation. ECF No. 29 and 37.

[2] Fuller does not dispute this allegation. *Id*.

9

being attacked by his cellmate. ECF No. 30 at Ex. F, G, H, and K. Householder in particular recalls specifically that Fuller merely asked for a single cell. *Id*. at Ex. I and J.

Fuller's January 14, 2012 ARP regarding Officer Lambert's knowledge about the assault by Thomas, claimed only that he told Lambert that Thomas was "not a good cell mate and that he was acting crazy." ECF No. 30 at Ex. A, p. 20. In the first ARP filed by Fuller on December 29, 2011, Fuller did not mention Lambert and does not state that Thomas had threatened to attack or bite him prior to the incident occurring. *Id*. at pp. 17 – 18. Defendant Harbaugh also denies ever being informed by Fuller that Thomas presented a threat to him and states that Fuller made many illegitimate complaints about housing assignments, programming, and other matters. *Id*. at Ex. M. Notwithstanding Fuller's penchant for making unfounded claims, however, Harbaugh states that his claims were investigated and included appropriate referrals. *Id*. Harbaugh additionally notes that Fuller was constantly trying to get a single cell for various reasons, but he did not qualify for one given there was no history of extreme violence, serious mental illness, or a medical reason for the assignment. *Id*.

Sgt. McAlpine (now Lt. McAlpine) states that Fuller never expressed a fear that his cellmate was going to assault him, nor did any other officer relay any communication regarding a threat. ECF No. 30 at Ex. N. McAlpine states if he had received information of that nature, Fuller would have been brought to the office to meet with Lt. Harbaugh. McAlpine also notes that he would have been present during the interview as he was often present during such interviews and that if Fuller's report were credible he would have been moved to a safer cell. McAlpine also recalls that Fuller was constantly trying to get assigned to a single cell. *Id*.

The decision issued by the Administrative Law Judge (ALJ) as a result of Fuller's IGO hearing is consistent with Defendants' observations of his manipulative nature. The ALJ found

as facts that Fuller: wanted a single cell, but had a cellmate; had a history of conflicts with cellmates and other inmates; considers the entire staff of the Division of Correction to be racist and working against him; and had "opined that some other cellmates with whom he had problems should be executed." ECF No. 30 at Ex. A, p. 26. In addition, the ALJ found that during the fight with Thomas, Thomas had bitten Fuller while Fuller gouged Thomas's eye and grabbed his testicles and that Fuller had never requested Thomas's name to be placed on his enemies list. *Id*. With respect to Fuller's credibility, the ALJ observed that he "has absolutely no demeanor-based credibility. His aggressiveness, argumentativeness, racist overtones, inability to stay on point, and abruptly leaving the hearing sabotaged any semblance of favorable demeanor-based credibility that he may otherwise have had." *Id*. at p. 27.

Defendants' characterization of Fuller is further confirmed by the content and tone of pleadings filed with this Court. Fuller refers to himself as a political prisoner, references the racial make-up of the prison population and correctional staff without explaining its relevance to his claim, and states on numerous occasions that his main objective is to obtain programming that will help him earn money, reduce his prison sentence, and obtain a single cell or a cellmate of his choosing. *See* ECF Nos. 1 at pp. 8, 13 – 14; 29 at Attachment 3, pp. 3- 5; and 37 at pp. 2 and 5 -6. Given Fuller's history of manipulative behavior, it is clear that even assuming he told Defendants that he was being threatened by his cellmates they did not draw the inference that a specific known risk of harm existed. Absent that inference being drawn, an Eighth Amendment claim is not established and Defendants are entitled to summary judgment in their favor.

<u>Retaliation Claim</u>

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that

11

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993) "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994).

Liller states that Fuller's claim that he was removed from the BMP as retaliation for filing an ARP is false. Rather, Fuller was removed from the program because he violated a verbal contract established by the treatment team requiring him to refrain from contacting the victim of his crime, a teller who worked at the bank Fuller robbed. It became known that Fuller

12

called the victim on the phone, wrote explicit letters to her, and attempted to have other inmates contact her on his behalf. When confronted, Fuller admitted doing so and claimed he wanted the victim to be his "pen pal" or girlfriend. ECF No. 30 at Ex. E. Fuller does not deny or attempt to refute the assertion that he contacted the victim of his crime. ECF No. 29 and 37. The existence of a valid, legitimate reason for Fuller's removal from a prison program defeats his claim that the action taken was retaliatory. Defendants are therefore entitled to summary judgment on this claim.

## Conclusion

Fuller's request for injunctive relief requiring his transfer to either another prison or a different housing unit must be denied in light of the absence of evidence that his constitutional rights have been abridged. "[T]o survive summary judgment, [Plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Fuller has failed to establish a disregard for his safety entitling Defendants to summary judgment in their favor.

A separate Order follows.

Date: July 1, 2013

/s/
Alexander Williams, Jr.
United States District Judge